UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARBOR LAUNDRY SALES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAYFLOWERS TEXTILE SERVICE CO., et al., <br><br> Defendants. | Civil Action No. 09-6259 (NLH) <br><br><br> OPINION |

**APPEARANCES:**
Steven Maniloff, Esquire
Patrick T. Ryan, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
Liberty View
457 Haddonfield Road, Sixth Floor
Cherry Hill, NJ 08002
      *On behalf of plaintiff*

Stuart Alan Schwager, Esquire
Lerch, Early & Brewer, Chtd.
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814
      *On behalf of defendants*

**HILLMAN, District Judge**

In this breach of contract case, presently before the Court is defendants' motion for summary judgment on plaintiff's claims against them. For the reasons expressed below, defendants' motion will be denied.

**I.   BACKGROUND**

Plaintiff, Harbor Laundry Sales, Inc. (hereinafter, "Harbor"), filed a Complaint against defendants Mayflower

Healthcare Textile Services LLC and Mayflower Textile Services Co. (hereinafter, "Mayflower"), asserting claims for breach of contract, declaratory judgment, and an accounting, because of Mayflower's alleged failure to pay sales commissions to Harbor pursuant to an agreement between the parties whereby Harbor would solicit and procure for Mayflower customers in need of commercial laundry services.  Mayflower subsequently filed a counterclaim against Harbor for restitution for allegedly over-paid commissions.

The main dispute is whether, under the memorandum agreement between Harbor and Mayflower, Harbor "procured" for Mayflower five hospital customers so that Harbor is due over $1.5 million in commissions.  Mayflower argues that Harbor did not procure any of those customers, and has moved for summary judgment on Harbor's three claims against it.  Harbor has opposed the motion.[1]

**II. DISCUSSION**

    **A.  Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

---

[1]Neither party has moved for summary judgment on Mayflower's counterclaim.

**B.   <u>Summary Judgment Standard</u>**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    C.    **Analysis**

Mayflower raises three arguments in its motion for why it is entitled to summary judgment:

(1) Harbor lost its standing as Mayflower's exclusive sale and marketing agent in the Philadelphia area because it failed to "secure reasonable opportunities from prospective customers for MTS to provide laundry services at an annual rate of at least 10 million pounds on or before June 30, 2005," as required by the parties' contract, and the determination of this issue is a matter of law for the Court to decide;

(2) no reasonable jury could find that Harbor "procured"--as required by the contract and defined by the Court as a matter of law--the five hospital contracts[2] for which Harbor claims it is

---

[2]The five hospital contracts in dispute are Virtua Health System, Children's Hospital of Pennsylvania, Temple Health System, Jefferson Health System, and Underwood Memorial Hospital.

entitled to commissions; and

    (3) Mayflower has not admitted it owes Harbor $241,323 by virtue of it making a clerical error.

    In opposition to Mayflower's motion, Harbor argues that disputed material facts abound as to all issues and claims, and, therefore, summary judgment must be denied.

    The Court agrees with Harbor.  Addressing Mayflower's first and second arguments, Mayflower contends that Harbor lost its exclusivity as Mayflower's sole sale and marketing representative in the Philadelphia area because the only contract Mayflower entered into as a result of Harbor's efforts prior to June 30, 2005--a contract with University of Pennsylvania Health System--resulted in only 4.6 million pounds of laundry as of June 30, 2005, and only a total of 8.7 million pounds of laundry by December 31, 2005.  Mayflower argues that these numbers make it clear that Harbor did not fulfill its contractual obligation to "secure reasonable opportunities from prospective customers for MTS to provide laundry services at an annual rate of at least 10 million pounds on or before June 30, 2005."

    This failure, Mayflower argues, leads into the analysis of Mayflower's second point--that Harbor did not procure five additional hospital contracts.  Because after June 30, 2005, Harbor was no longer Mayflower's exclusive sale and marketing representative, Mayflower argues that it was because of the

5

efforts of Mayflower, or others on Mayflower's behalf, that the five hospital contracts were obtained.  Mayflower contends that no reasonable jury would find that Harbor's actions "procured" those contracts.

Harbor presents a different interpretation of its exclusivity arrangement and its efforts in securing the five additional hospital contracts.  Harbor presents evidence that as of June 30, 2005, it had numerous meetings with representatives of prospective customers that would require the processing of more than 10 million pounds of laundry per year.  Harbor points out that four of those customers actually entered into contracts with Mayflower, and although those contracts were formed after June 30, 2005, it was because of Harbor's efforts prior to June 30, 2005 that (1) satisfied its obligation to "secure reasonable opportunities from prospective customers,"[3] and (2) entitled it

---

[3] Harbor points out that even if it lost its exclusivity as Mayflower's sole sale and marketing representative in the Philadelphia area, the contract provides that Harbor is still entitled to commissions for the customers it procured for Mayflower.  Thus, Harbor agues that Mayflower seeking summary judgment on that issue is improper, since that issue is irrelevant to its claims regarding entitlement to commissions--i.e., Harbor does not have to prove it retained its exclusivity in order to prevail on its claims.  Moreover, Harbor argues that Mayflower's stance on the exclusivity clause is actually a defense to payment, and it is Mayflower's burden to prove that Harbor did not live up to that agreement.  Mayflower responds that the issue is properly brought for summary disposition because it is directly relevant to Harbor's claims since it affects the analysis of the parties' actions in securing the five additional hospital contracts.  Because Mayflower's summary judgment motion will be denied, the Court will not address at

to commissions on "procuring" those customer contracts.  Harbor also presents evidence with regard to its efforts to procure the fifth contract at issue in this case.

Regardless of how the exclusivity provision is interpreted or how the word "procured" is defined,[4] what actions the parties took that ultimately led to Mayflower entering into laundering contracts with five hospitals cannot be resolved on summary judgment.  Harbor presents its efforts to meet with the five hospitals and market Mayflower's laundry services, and provides evidence to support its position.  Mayflower also presents its efforts to secure those same contracts, and provides evidence to support its position.  Even though Mayflower asks that this Court credit its proof over Harbor's, only a jury can decide which party's efforts created the "causal connection" between its activity and the signing of the contract so that that party can be considered the "procuring cause" of that sale.  See De Benedictis v. Gerechoff, 339 A.2d 225, 228 (N.J. Super. Ct. App.

---

this time whose burden it is to prove whether Harbor fulfilled the conditions of the exclusivity provision in the parties' contract.

[4]Both parties point out that either New Jersey or Pennsylvania law applies to Harbor's claims, but that under either state's law, the results are the same.  Because neither party has definitively argued for a particular state's law to apply, and both contend that under either New Jersey or Pennsylvania law, their interpretation of the contract is supportable, the Court will refrain from conducting a choice of law analysis at this time.

Div. 1975) (explaining that "for a broker to earn a commission from a Seller or buyer he must establish that he was the 'efficient producing cause' in bringing about the sale--at least in the sense of causing the seller to negotiate with a customer, produced by the broker, who is ready, able and willing to perform, and where the transaction is later consummated without a substantial break in the ensuing negotiations"); Amerofina, Inc. v. U. S. Industries, Inc., 335 A.2d 448, 453 (Pa. Super. 1975) ("There must be . . . a causal connection between the activities of the finder and the resultant acquisition or merger.  It is generally said that the middleman must be the efficient procuring cause of the transaction.").

    Finally, with regard to Mayflower's argument that it is entitled to summary judgment on Harbor's claim that Mayflower has admitted to owing Harbor $241,323, material disputed facts exist on that issue as well.  In December 2008, Mayflower sent Harbor an email containing a list of commissions paid to Harbor. Included in that list were three checks totaling $241,323, but Harbor never received those checks.  Harbor contends that after sending Mayflower three emails to report that it had not received those commission checks, Mayflower promised to send overdue commission payments, although Harbor claims Mayflower never did.

    During discovery in this case, it was determined that the three checks listed as commission payments to Harbor were

actually made out to different payees.  Mayflower contends that this was simply a clerical error, Harbor is not entitled to those checks, and, therefore, it cannot be held to have admitted to owing Harbor that amount.  Harbor argues that Mayflower's counterclaim includes that amount in its request for restitution, which is inconsistent with its contention that Harbor is not owed that commission.  This dispute is for the jury to resolve.

### III. **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's claims against them will be denied.  An appropriate Order will be entered.

Date: March 28, 2012            　　s/ Noel L. Hillman  
　　　　　　　　　　　　　　　　　　NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey